**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **TEDDY LAMBETH,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 12-0169-WS-N** |
| | ) |
| **PETERBILT MOTORS COMPANY,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

    This matter comes before the Court on plaintiff's Motion to Remand (doc. 8). The Motion has been briefed and is now ripe for disposition.

**I.    Relevant Background.**

    Plaintiff, Teddy Lambeth, brought this action against named defendants Peterbilt Motors Company and PACCAR, Inc. in the Circuit Court of Conecuh County, Alabama, on or about February 3, 2012. The Complaint described the underlying incident as follows: "On or about February 5, 2010, Plaintiff Teddy Lambeth … was attempting to enter the cab of the Peterbilt truck he was going to operate, and when he stepped onto the side step located on said truck, the step collapsed, causing him to fall and sustain a serious injury to his back." (Complaint, ¶ 13.) The Complaint divulges no specifics about this "serious injury," in terms of medical diagnosis, treatment plan, prognosis, permanent or transitory nature of injury, functional limitations, or quantification of medical expenses or lost wages.[1]

_____

[1]    At most, the Complaint includes largely stock language concerning Lambeth's injuries and damages, to-wit: "he was made sick, sore and lame; he was bruised and contused in and about various portions of his body, including a serious injury to his back; he was caused to undergo medical treatment and procedures for his injuries; he was caused to miss time from work and he incurred and continues to incur lost wages; he was caused to suffer physical pain and mental anguish, and still so suffers and will suffer in the future; and he was caused to incur doctor bills, hospital bills and other medical expenses for the care and treatment of said injuries." (Complaint, ¶¶ 28, 34, 42, 49.)

Based on this incident, Lambeth asserts exclusively state-law causes of action against Peterbilt and PACCAR on theories of products liability / AEMLD, negligence and wantonness, failure to warn, and breach of express and implied warranties.  In support of these theories, Lambeth alleges that Peterbilt and PACCAR designed, manufactured and installed the step system on the truck; that the step was defective and/or otherwise unsafe; that defendants were aware of the unsafe/defective condition; that defendants failed to provide adequate warnings to consumers about the step's defectiveness and propensity to fail; and so on.  Lambeth seeks an award of unspecified compensatory and punitive damages.

On March 6, 2012, PACCAR filed a Notice of Removal (doc. 1), removing this action to this District Court pursuant to 28 U.S.C. §§ 1441 and 1446.[2]  PACCAR argued that federal subject-matter jurisdiction was conferred by 28 U.S.C. § 1332, inasmuch as there is complete diversity of citizenship between Lambeth and defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Lambeth has now moved for remand of this action to Conecuh County Circuit Court, reasoning that diversity jurisdiction does not lie because the amount-in-controversy requirement is not satisfied.  Defendants disagree, insisting that the minimum jurisdictional threshold is indeed present.  Both sides rely exclusively on the language of the Complaint, and no outside or additional evidence has been presented by anyone.  Thus, the Motion to Remand hinges on the application of Eleventh Circuit amount-in-controversy principles in removal actions to the damages allegations of the Complaint.

II.     **Analysis.**

      A.     ***Legal Standard for Motion to Remand.***

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction.  *See City of Vestavia Hills v. General Fidelity Ins. Co.*, --- F.3d ----, 2012 WL 1232110, *2 n.1 (11th Cir. Apr. 13, 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."); *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal

---

[2]     On the same day that defendant PACCAR filed its Notice of Removal, defendant Peterbilt filed a document styled "Consent to and Joinder in Removal of Defendant Peterbilt Motors Company" (doc. 4).  As such, the unanimity of the defendants in the removal process cannot reasonably be called into question.

jurisdiction exists") (citation omitted).  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See City of Vestavia Hills*, 2012 WL 1232110, at *2 ("[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.  Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.") (citation omitted).[3]

There being no federal question presented in the Complaint, PACCAR's sole jurisdictional hook for removal was diversity of citizenship.  Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted).  Thus, "[a] defendant may remove an action to a district court that would have original jurisdiction if complete diversity between the parties exists and the amount in controversy exceeds $75,000."  *City of Vestavia Hills*, 2012 WL 1232110, at *2 n.1.  "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction … [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined."  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted); *see also Osting-Schwinn*, 613 F.3d at 1086 (similar).

### B.     The Amount in Controversy.

As noted, the sole issue presented in Lambeth's Motion to Remand is whether the § 1332 amount-in-controversy requirement is satisfied.[4]

---

[3]      *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand).

[4]      No colorable argument has been advanced that complete diversity of citizenship is lacking.  In that regard, it is undisputed that Lambeth is an Alabama citizen for diversity purposes, that Peterbilt is an unincorporated entity with its principal place of business in Texas, and that PACCAR is a Delaware corporation with its principal place of business in Washington.  There appearing to be no question that plaintiff is of diverse citizenship from both named (Continued)

-3-

The removing defendants bear the burden of proof on this issue.  It is well-settled that "[i]f a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement."  *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations and internal quotation marks omitted).  In shouldering this burden, a removing defendant "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  Rather, the defendant may satisfy its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper."  *Roe*, 613 F.3d at 1061 (citations omitted).  What the defendant may not do, however, is rely exclusively on "conjecture, speculation, or star gazing" to establish the requisite amount in controversy.  *Pretka*, 608 F.3d at 754.

In the case at bar, PACCAR and Peterbilt have come forward with no additional evidence (beyond the pleadings themselves) demonstrating that the amount in controversy exceeds $75,000.  That omission, by itself, is not fatal to removal.  Again, the Eleventh Circuit has recognized that in some cases, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when the complaint does not claim a specific amount of damages."  *Roe*, 613 F.3d at 1061 (citations and internal quotation marks omitted).  This is the approach selected by defendants to carry their burden.

In the "facially apparent" method for proving amount in controversy, the removing defendant need not come forward with evidence beyond the text of the complaint.  Instead, the Eleventh Circuit has instructed that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Roe*, 613 F.3d at 1062.  In that regard, courts are free to rely on "reasonable deductions,

---

defendants, the diversity prong of the § 1332 jurisdictional analysis is satisfied, without regard to the citizenship of any fictitious defendants.  *See generally Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) ("Diversity jurisdiction requires complete diversity between named plaintiffs and defendants."); 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

reasonable inferences, or other reasonable extrapolations from the pleadings," and "need not suspend reality or shelve common sense" in performing this analysis.  *Id.* at 1061-62 (citations and internal quotation marks omitted).  Nonetheless, the clear teaching of binding precedent is that courts must not resort to conjecture or speculation in deeming the amount-in-controversy requirement to be satisfied.  *See Pretka*, 608 F.3d at 753-54 ("without facts or specific allegations, the amount in controversy could be divined only by looking at the stars – only through speculation – and that is impermissible") (citation and internal marks omitted).

The parties spar as to where the factual allegations of Lambeth's Complaint lie on the continuum between improper speculation and reasonable inference.  After careful review of the briefs and the factual allegations of the Complaint (the sole source of information pertaining to the amount in controversy), the Court concludes that defendants have not met their burden of establishing the sufficiency of the amount in controversy.  The Complaint indicates that Lambeth hurt his back while trying to enter the cab of a Peterbilt truck.  While the back injury is characterized as "serious," nothing in the Complaint elaborates on the nature or severity of that injury, or otherwise lends substance or meaning to it.  We simply do not know -- or have any basis for inferring from the pleadings -- anything about how severe, permanent, debilitating or painful the injury might be; how extensive, costly, or traumatic the course of treatment was, is or might be; or whether and to what extent the injury did, does or will constrain Lambeth's work or life activities.

As expected, defendants place tremendous weight on the *Pretka / Roe* guidance that courts are permitted to engage in deduction, inference and extrapolation, and to rely on their experience and common sense, in evaluating the amount in controversy.  But in the context of this case, those techniques do not compensate for the dearth of facts about plaintiff's injury.  Again, all that is known is that Lambeth says he hurt his back when a side step collapsed as he was climbing into a truck.  Back injuries are not *per se* accompanied by an amount in controversy in excess of $75,000.  Indeed, there are occupational back injuries as to which a low four-digit amount may be all that is legitimately in controversy.  And there are occupational back injuries as to which a high six-digit amount may be in controversy after accounting for punitive damages.  Where on this wide monetary spectrum of potential recoveries and amounts in controversy does Lambeth's back injury lie?  The Court has no way of knowing, other than by guesswork and assumption.  Certainly, the Complaint does not say.  And defendants have done

-5-

nothing more than point to the Complaint.  All the reasonable inferences and extrapolation in the world cannot obscure that fundamental shortcoming in the record.

To be sure, in the Notice of Removal (doc. 1), PACCAR cited the Complaint's allegations that Lambeth's injury was "serious," that he "was made sick, sore and lame," that he was "bruised and contused," that he underwent unspecified "medical treatment and procedures," that he suffered "physical pain and mental anguish," and so on.  But "serious" is such a general, subjective modifier that it reveals next to nothing about Lambeth's injury.  In the eyes of the beholder (or a hypothetical plaintiff's attorney given to puffery in his pleadings), a hangnail might be considered "serious."  And boilerplate language about Lambeth being sick and sore, having bruises, experiencing pain and suffering, and the like is devoid of substance in evaluating how extensive his injuries are, how disabling they might be, or how expansive the claimed compensatory damages are likely to be.[5]  This type of non-specific, general allegation is found in virtually every complaint for personal injury, and falls far short of giving rise to a reasonable inference that the amount in controversy exceeds $75,000.[6]

Nor does the Complaint's reference to punitive damages automatically equate to an amount in controversy in excess of $75,000.  *See, e.g., Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (determining that "it is not facially apparent from Williams' complaint that the amount in controversy exceeds $75,000," where complaint alleged that plaintiff had suffered permanent physical and mental injuries for which she sought general, special and punitive

_____

[5]     For example, this language would be equally consistent with an injury that had rendered the plaintiff unable to work for two years and an injury that had caused him to miss three hours of work.  It would be equally consistent with an injury that incapacitated the plaintiff for six months and an injury that caused him to wake up feeling groggy and achy the next morning.  The point is that for amount-in-controversy purposes, these sorts of general allegations of injury are unilluminating to the extreme.

[6]     Cases where the "facially apparent" requirement has been deemed satisfied involve substantially more detail in the pleadings than is set forth in Lambeth's Complaint.  *See Nelson v. Whirlpool Corp.*, 668 F. Supp.2d 1368 (S.D. Ala. 2009) (in wrongful death action where complaint "alleges that the defendants wantonly took human life … it is readily deducible from the complaint that the amount in controversy exceeds $75,000"); *Maconeghy v. Cooper Tire & Rubber Co.*, 2008 WL 4811398, *3 (S.D. Ala. Nov. 3, 2008) (complaint satisfied amount in controversy by alleging that plaintiff had "suffered serious and permanent injuries which will affect him for the rest of his life," that "he is unable to perform normal daily activities," and that "he has been permanently disfigured and disabled," among other things).

damages in unspecified amounts); *Reed v. Chase Home Finance, LLC*, 2011 WL 321737, *4 (S.D. Ala. Jan. 28, 2011) (noting paucity of authority that mere presence of demand for emotional distress and punitive damages carries removing defendant's burden of demonstrating that amount-in-controversy threshold is satisfied); *Paco Assur. Co. v. Rowley*, 2009 WL 3756697, *2 (S.D. Ala. Nov. 5, 2009) (rejecting notion that plaintiff's claim for punitive damages necessarily vaults amount in controversy above the $75,000 jurisdictional floor).  To be sure, plaintiff's claim for punitive damages is properly considered in the evaluation of whether defendants have shown that the amount in controversy exceeds $75,000.  But there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction.

Defendants also argue that the Motion to Remand should be denied because any other ruling would allow plaintiffs like Lambeth to "pull a rabbit of [*sic*] a hat" (doc. 10, at 13) by playing fast and loose with the jurisdictional allegations in their pleadings.  In particular, defendants bemoan the use of "tactics" in which plaintiff's counsel provides "vague" and "smoke-and-mirror" damages allegations in his complaint, only to force defendants into a "Hobson's Choice" with respect to removal.  (*Id.*)  As described by PACCAR, this dilemma is that defendants can either remove the case immediately under the "first paragraph" of 28 U.S.C. § 1446(b) (and run the risk of having the case remanded for lack of proof of the amount in controversy) or wait until discovery solidifies the amount in controversy and then remove the case under the "second paragraph" of § 1446(b) (and run the risk of having the case remanded on timeliness grounds on the theory that it could have been removed earlier based on the factual allegations of the original pleading).[7]

---

[7]        The "first paragraph" / "second paragraph" language used by defendants is anachronistic and obsolete, as are the lengthy statutory quotations provided on page 4 of their brief.  Section 1446(b) was amended and subdivided last year in such a manner that it no longer has a "first paragraph" or a "second paragraph."  *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Publ.L. 112-63, § 103(b)(3)(B).  What PACCAR calls the "first paragraph" is now found at § 1446(b)(2)(B), which generally provides that defendants must file a notice of removal within 30 days after receipt of the initial pleading.  And what PACCAR calls the "second paragraph" is now found at § 1446(b)(3), which provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant … of a … paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Notwithstanding defendants'
(Continued)

These sentiments are an oft-heard refrain voiced by members of the defense bar who feel aggrieved by the manner in which Eleventh Circuit amount-in-controversy jurisprudence has developed in recent years. Their lament is understandable. It is true enough that defendants who wish to remove an action to federal court on diversity grounds may face daunting proof obstacles and difficult strategic choices, particularly as to whether to remove the case right away or to develop additional evidence on damages via discovery before pulling the removal trigger. Contrary to defendants' insinuation, however, Lambeth neither created this state of affairs nor engaged in impropriety, trickery or skullduggery in proceeding as he has. For better or worse, the harrowing Scylla-and-Charybdis scenario described by PACCAR is a natural, inevitable consequence of the interaction among liberal pleading rules that do not require a plaintiff to plead injuries and damages with specificity, strict federal removal statutes that place both the burden of proof and temporal constraints on removing defendants, and appellate evolution of a substantial, subjective gray area in which defense counsel cannot discern for sure whether the "facially apparent" criterion will be deemed to be satisfied in a particular case.[8] Lambeth is not to blame for conforming his pleadings to the applicable procedural requirements and for holding PACCAR to its statutory burden of proof on removal. And PACCAR's dissatisfaction with the practical effects of this statutory, procedural, and doctrinal landscape on its ability to remove a case to federal court does not authorize this Court to ignore, rewrite or otherwise dispense with those requirements. A perception of unfairness or hardship is not a valid reason to excuse removing defendants from their strict jurisdictional burden of proving by a preponderance of the

---

oversight concerning the amendment, the fundamental point remains: If the case is removable at its inception, then the defendant must act within 30 days after service of process. If the case later becomes removable, then the defendant must act within 30 days after receiving paper from which it first may ascertain that fact. As defendants argue, it may not be a clearcut endeavor for a defendant to determine when the case first became removable or when the 30-day removal window commences, so either path (removing immediately, or waiting for discovery on damages) is fraught with uncertainty and the potential for failure.

[8]      That is not to say that this Court deems Lambeth's Complaint to lie within that "gray area," but is simply to acknowledge that such an area exists in which reasonable minds could differ as to whether a plaintiff's damages allegations do or do not render it facially apparent from the pleadings that the amount in controversy exceeds $75,000.

evidence that the amount in controversy exceeds $75,000.  Here, defendants simply have not carried that burden.[9]

Finally, defendants point to jury verdicts in other cases and insist that "a review of Alabama trial court verdicts showcases that the amount in controversy in this case is greater than $75,000."  (Doc. 10, at 20.)  It does nothing of the sort.  Without knowing what Lambeth's injuries are, it is nothing short of folly to liken his claims to those of another plaintiff in another case.  There is no reasonable, principled basis for drawing an apples-to-apples comparison between Lambeth and any plaintiff in any of the other cases described by defendants.  Without knowing the nature and severity of his injuries, any attempt to formulate an analogy between Lambeth and an injured plaintiff in another case who received damages greater than $75,000 is nothing more than gross speculation, guesswork and wishful thinking, none of which the Court can indulge.[10]

---

[9]    The other, broader point is that plaintiff, not defendant, is the master of his complaint.  *See Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004) ("the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading" his claims in a manner calculated to achieve that result)  (citation omitted); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (similar).  If a plaintiff wants to be cagey, vague, or imprecise in his complaint about the nature and extent of the injuries for which he seeks recompense, it is ordinarily his prerogative to do so.  In that event, the defendant's remedy is to avail itself of the arsenal of available discovery tools to flesh out the plaintiff's injuries and damages claims with precision.  But defendants in this case bypassed those mechanisms and leaped ahead to removal, notwithstanding the paucity of hard facts in the Complaint from which an amount-in-controversy assessment could reasonably be made.

[10]    An example may make the point more concrete.  Defendants champion the April 2010 verdict in *McWhorter v. Bridgeport Tarping Service* from Etowah County, Alabama, as demonstrating that the amount in controversy must be satisfied here.  In *McWhorter*, defendants say, the plaintiff received a jury award in excess of $400,000 where he suffered a leg injury, back contusions and emotional distress for falling off a truck.  (Doc. 10, at 20.)  The implication is that if Mr. McWhorter was injured to the tune of $400,000 when he fell off a truck, then Lambeth's claims for injury sustained in falling from a truck step must be of a similar magnitude.  This logic is faulty.  On this record, how can one possibly liken Lambeth's unspecified back injury to the horrific "degloving" of Mr. McWhorter's right leg?  One cannot.  And the superficial similarity that both men purportedly sustained injuries relating to falling from a truck tells us nothing about the similarity of their damages claims.  To compare Lambeth to McWhorter based on what is known today would be to engage in impermissible speculation and stargazing.  This Court will not do so.

**III.    Conclusion.**

Because it is not facially apparent from the Complaint that the amount-in-controversy prong of § 1332 is satisfied, the Court concludes that federal subject-matter jurisdiction is lacking and that removal was improper.  Accordingly, plaintiff's Motion to Remand (doc. 8) is **granted**, and this action is hereby **remanded** to the Circuit Court of Conecuh County, Alabama, for further proceedings.

DONE and ORDERED this 15th day of May, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE